IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 04-82-BLG-RFC |
| Plaintiff/Respondent, | |
| vs. | ORDER DENYING SOME CLAIMS |
| BRIAN EDWARD BARKER, | |
| Defendant/Movant. | |

On March 23, 2012, Defendant/Movant Brian Barker ("Barker"), a federal prisoner proceeding pro se, filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. On June 29, 2012, Barker filed a memorandum in support.

On September 24, 2012, both the United States and Barker were required to submit limited additional materials. They complied on October 30 and November 1, 2012, respectively. On December 21, 2012, Barker filed a motion to amend his § 2255 motion to allege additional claims. The United States did not respond because it has not yet been ordered to respond to any of Barker's claims. See Rule 4(b), Rules Governing § 2255 Proceedings.

1

A separate Order accompanying this one requires the United States to show cause why the § 2255 motion should not be granted as to Barker's life sentence; ruling on another claim is reserved pending the response to that claim. This Order disposes of Barker's other claims.

## I. Preliminary Screening

The motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), § 2255 Rules.

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolaus*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

Because this case is intertwined with another, the history of both cases is set forth here.

In 2003, Barker, widely known to be a drug dealer, was under investigation by authorities in Missoula and in Billings. On May 7, 2003, Barker and his co-defendant, co-conspirator, and nephew, Raymond Tetzlaff, were indicted in the Missoula Division of this Court. Barker, Tetzlaff, "and others" were charged with conspiring, between December 2002 and March 2003 in Missoula, Great Falls, and Billings, to distribute a substance containing at least 50 grams of methamphetamine, a violation of 21 U.S.C. §§ 846 and 841(a) (Count 1). Barker alone was charged with possessing, in Great Falls on December 27, 2002, at least 50 grams of methamphetamine with intent to distribute it, a violation of 21 U.S.C. § 841(a)(1) (Count 2). In Count 3, Tetzlaff was charged with possessing, in Missoula, at least 50 grams of methamphetamine with intent to distribute; the United States pled a *Pinkerton* theory[1] that exposed Barker to liability on that count as well. Indictment (doc. 1) at 2-3, *United States v. Barker*, No. CR 03-29-M-DWM ("*Barker I*" or "the Missoula case") (D. Mont. filed May 7, 2003). Based on the type and quantity of drug alleged in the Indictment, conviction on any of Counts 1, 2, or 3 would subject Barker to a five-year mandatory minimum sentence and a forty-year maximum

---

[1] *See Pinkerton v. United States*, 326 U.S. 640, 647 (1946) ("If [the overt act element in a conspiracy charge] can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offense.").

sentence. 21 U.S.C. § 841(b)(1)(B)(viii). Based on the Indictment, a warrant was issued on May 8, 2003, for Barker's arrest. Docket Entry for May 8, 2003, *Barker I*.

While that warrant was outstanding, an agent in Billings received information from one Tasha Carter that her drug source, Sheila Pich, was expecting delivery of a package of methamphetamine in the mail. A postal inspector intercepted a package addressed to "Sister Sheila" at Pich's residence, and a controlled delivery was made. Inside the package was a pound of methamphetamine. Pich agreed to cooperate with the ongoing investigation. She said the package was from Barker and that her aunt was planning to take a bus from Billings to Butte to give Barker his money. Billings officers alerted Missoula officers, whose warrant was outstanding, that Barker was expected to be in Butte on July 23, 2003.[2] On that day, the bus, officers from Billings, and officers from Missoula all went to Butte. When the bus arrived, officers spotted Amanda Brothers there to meet it. When the person Brothers expected to meet did not emerge from the bus, Brothers went instead to a motel, where a man in a pickup truck met her, talked with her, and then drove away. The officers followed the truck. Believing the driver to be Barker, they asked a uniformed officer in a marked car to stop the truck. At the scene of the stop, the driver was confirmed to be

---

[2] The Warrant Return gives the date as July 21, 2003, but it was not executed by the arresting officer. The officers who made the arrest testified it occurred on July 23, 2003.

4

Barker. He was arrested on the warrant. Two duffel bags were seized from the vehicle. One contained methamphetamine, heroin, pills, and marijuana, and one contained a significant amount of cash. *E.g.*, Tr. Suppression Hr'g (doc. 77) at 4:25-19:12, 57:8-22, *United States v. Barker*, No. CR 04-82-BLG-RFC (D. Mont. Aug. 4, 2005).

The next day, July 24, 2003, Barker was arraigned on the *Barker I* indictment. Minutes (doc. 23). Barker retained attorney Robert L. Stephens, who appeared on his behalf on August 19, 2003. Substitution of Counsel (doc. 34). On October 21, 2003, the United States filed an Information, alleging that Barker had previously been convicted of two felony drug offenses. Filing of the Information elevated the mandatory minimum sentence from five years to ten and the maximum sentence to life. Information § 851 (doc. 81); 21 U.S.C. §§ 841(b)(1)(B), 851(a)(1).[3]

Barker eventually agreed to plead guilty to Count 2. In exchange, the United States agreed to dismiss Counts 1 and 3 and to "bring no further action against the Defendant based upon the facts alleged in this indictment or the acts or occurrences giving rise to this indictment." Plea Agreement (doc. 82) at 2 ¶ 4, 8 ¶ 12; *see also id.* at 9-10 ¶ 17. Barker's guilty plea was accepted on October 27, 2003. Minutes (doc.

---

[3] Only one prior conviction is required under 21 U.S.C. § 841(b)(1)(B), but the Information alleged two.

5

83).

A presentence report was prepared. Because Barker had methamphetamine, heroin, and marijuana, all the drugs were converted to marijuana, *see* U.S.S.G. § 2D1.1 Application Note 10, for a total of 1,018.4 kilograms of marijuana. Nonetheless, Barker was ultimately held responsible for 700 to 1,000 kilograms of marijuana, for a base offense level of 30. *Id.* § 2D1.1(c)(5). He received a three-level downward adjustment for acceptance of responsibility, *id.* § 3E1.1, for a total offense level of 27. Presentence Report ¶¶ 36-47. His criminal history category was VI. *Id.* ¶ 75. His guideline range was 130-162 months, U.S.S.G. ch. 5 Part A (Sentencing Table) – higher than the ten-year mandatory minimum triggered by the § 851 Information. Barker testified at sentencing. He was cross-examined about his reasons for being in Butte on the day of his arrest and about his relationship with Brothers.

On February 13, 2004, Barker was sentenced to serve 162 months in prison, to be followed by a five-year term of supervised release. Judgment (doc. 108) at 2-3.

On May 24, 2004, a grand jury indicted Barker in this case, *Barker II* or "the Billings case." Amanda Brothers was named as a co-conspirator. *Barker II* Indictment (doc. 1) at 2. Another warrant was issued. Barker was arrested at a federal prison in Victorville, California, and arraigned in this Court on December 9,

6

2004. He again retained Rob Stephens to represent him. Minutes (doc. 12).

On July 8, 2005, the United States filed an Information alleging the same two prior state felony drug convictions that were alleged in *Barker I*. Information § 851 (doc. 61). Because Count 1 of the Indictment alleged a conspiracy involving more than 500 grams of methamphetamine, filing of the Information elevated the mandatory minimum sentence from ten years to twenty years, if one prior conviction was valid. If both prior convictions were valid, Barker faced a mandatory term of life in prison. 21 U.S.C. §§ 841(b)(1)(A), 851(a)(1).

Although jury trial commenced on October 12, 2005, a juror's outburst caused a mistrial. Minutes (doc. 102). On November 21, 2005, a superseding indictment was obtained. Count 1 charged Barker with conspiring with Brothers, Pich, "and others" to distribute and to possess with intent to distribute at least 500 grams of a substance containing methamphetamine, a violation of 21 U.S.C. §§ 846 and 841(a)(1); distributing at least 500 grams of a substance containing methamphetamine (Count 2); and possessing with intent to distribute at least 500 grams of a substance containing methamphetamine (Count 3). Although Counts 2 and 3 did not use statutory language or allege any facts showing a conspiracy, each count cited 21 U.S.C. § 846 as well as § 841(a)(1). Each offense was alleged to have occurred in Billings from January 2003 through July 23, 2003. Superseding Indictment (doc.

7

114) at 2. Based on the type and quantity of drug alleged, conviction on any of Counts 1, 2, or 3 would subject Barker to a ten-year mandatory minimum sentence and a maximum sentence of life. 21 U.S.C. § 841(b)(1)(A)(viii). Given the previous filing of the § 851 Information, Barker again faced a potential mandatory sentence of life in prison.

On March 17, 2006, the United States again filed its § 851 Information in advance of trial. The document had no caption. It alleged, however, the same two state convictions that had been alleged in *Barker I* and the first time the § 851 Information was filed in this case, *Barker II*. See [Second] Information § 851 (doc. 159) at 1-2; Supp. Information § 851 (doc. 159-1) at 1-2.

The parties agreed to a bench trial, which commenced on March 21, 2006. Pich and Tetzlaff testified. Barker also testified, as the last witness, about his understanding of the plea agreement in *Barker I*. He was acquitted on Count 1, the conspiracy count, because the evidence did not show that Barker's frequent but random transactions with Sheila Pich constituted a conspiracy. Barker was convicted on Counts 2 and 3. Bench Trial Tr. (doc. 211) at 212:10-214:3.

On July 21, 2006, based on his two prior state felony drug convictions, Barker was sentenced to a mandatory term of life in prison on both counts, concurrent with each other and with his sentence in *Barker I*. A five-year term of supervised release

was also imposed. Minutes (doc. 195); Judgment (doc. 198) at 2-3.

Barker appealed. He argued that his prosecution in *Barker II* was barred by double jeopardy and by the terms of the plea agreement in *Barker I*. He also challenged, on procedural grounds, the validity of the captionless § 851 Information filed in *Barker II*. The Court of Appeals rejected the double jeopardy claim, declined to address the § 851 claim, and remanded the case for an evidentiary hearing "to determine what the parties reasonably understood to be the terms of the plea agreement." Mem. at 4, *United States v. Barker*, No. 06-30443 (9th Cir. July 17, 2007) (doc. 216) (unpublished mem. disp.).

After a hearing at which AUSA Van de Wetering, Stephens, and Barker, among others, testified, I found "no factual basis for claiming that the package mailed to Sheila Pich was an act or occurrence that gave rise to the Missoula Indictment" and concluded that "the terms of the Missoula plea agreement did not bar the government from prosecuting Defendant on Count II or III of the Superceding Billings Indictment." Order (doc. 248) at 18-19.

Barker again appealed. He challenged the interpretation of the plea agreement, the government's failure to disclose its intent to prosecute him for additional drug crimes, and, again, the validity of the § 851 Information. On December 17, 2010, the Ninth Circuit Court of Appeals affirmed my interpretation of the plea agreement and

deemed the duty-to-disclose issue and the § 851 procedural and notice issues waived. Mem. at 3-5, *United States v. Barker*, No. 09-30339 (9th Cir. Dec. 17, 2010) (doc. 256) (unpublished mem. disp.).

Barker's conviction became final ninety days later, on March 17, 2011. 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 532 (2003). He states that he signed his § 2255 motion and deposited it in the prison mail system on March 8, 2012. Although the Clerk did not receive it until fifteen days later, on March 23, 2012, the motion is deemed filed when Barker put it in the prison mail system. Mot. § 2255 at 17, Pet'r Decl.; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule).

### III. Barker's Claims and Analysis

Barker alleges claims of ineffective assistance of trial and appellate counsel, prosecutorial misconduct, clear error by the Court, and "constructive ineffective assistance of counsel." His claims are reorganized here.

**A. Duty to Disclose**

Barker claims the prosecution had a duty to disclose "its intent to bring a second indictment" in *Barker II* "before, during, and at the time of entry of a guilty plea" in *Barker I*, Mot. § 2255 (doc. 261) at 6 ¶ 2, because "[t]he government had a duty under the law and constitution to bring in a single indictment/prosecution all

unlawful acts and conduct known by the government Barker was involved with in a single charging instrument" and to refrain from bringing "piece meal charges . . . in order to enhance a defendant's sentence," *id.* at 11 ¶ 1. *See also id.* 12 ¶ 2(a), 11 ¶ 11, 12 ¶ 2(a), 13 ¶ 1[2],[4] 14 ¶¶ 2-3.

The government does not, in fact, have a duty to bring in one prosecution all the crimes it believes a defendant has committed. A prosecutor must disclose additional charges that are being contemplated if his failure to do so would violate due process. *United States v. Krasn*, 614 F.2d 1229, 1234 (9th Cir. 1980). But Barker knew other federal law enforcement officers in Montana were investigating his activities in Billings. When he was contemplating his plea in *Barker I*, he was already worried about getting a life sentence based on the quantity of methamphetamine he had been dealing since the fall of 2002. Stephens asked three different prosecutors in the District – Josh Van de Wetering and Joe Thaggard, who were involved in *Barker I*, and Jim Seykora, who was responsible for most drug cases in the Billings Division – whether any of them intended to pursue additional charges against Barker. Stephens asked the question precisely *because* he knew they knew about the Pich transactions and he knew they might charge Barker with them. Evid.

---

[4] There are two paragraphs numbered 1, 2, and 3 on page 13 and two paragraphs numbered 7 on page 9. The number in brackets clarifies which paragraph 1, 2, etc., is intended.

Hr'g Tr. (doc. 231) at 26:21-28:12, 60:20-61:9; *see also* Mem. at 4, *Barker*, No. 09-30339 ("Barker already knew of the possibility of future charges, and [he] unreasonably assumed that the plea agreement disclaimed indictment for future acts."). The prosecutors did not mislead Stephens or Barker or violate due process when they neither promised nor disavowed intent to act on those transactions. *See* Evid. Hr'g Tr. at 69:3-70:5, 75:8-76:21, 96:20-97:3.

Nor did the "piecemeal" charges in this case, which actually involved separate drug offenses, "enhance" Barker's sentence. The mandatory minimum life sentence applies only if a defendant "commits" the offense "*after* two or more prior convictions for a felony drug offense have become *final*." 21 U.S.C. § 841(b)(1)(A) (emphases added). The offenses in *Barker II* were completed "on or about July 23, 2003." *Barker II* Indictment at 2; Superceding Indictment at 2. That was the date of Barker's arrest in Butte on the *Barker I* warrant. The conviction in *Barker I* did not become final until the time for appeal expired on March 2, 2004. *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987); Fed. R. App. P. 4(b)(1)(A)(i). That was more than seven months after the acts alleged in *Barker II* concluded with Barker's arrest. So the *Barker I* conviction could not be a predicate for the sentence in *Barker II*. Nor was it; every § 851 Information the United States ever filed against Barker alleged the same two state convictions. *See Barker I* § 851 Information (doc. 81);

*Barker II* § 851 Informations (docs. 61, 159, 159-1); Sentencing Tr. at 22:9-17. Barker received three criminal history points for *Barker I*, Presentence Report ¶ 66, but they did not increase his advisory guideline range. The highest criminal history category starts at 13 points. U.S.S.G. ch. 5 Part A (Sentencing Table). Without the *Barker I* conviction, Barker would have had 16 points. *Barker II* Presentence Report ¶ 75.

Finally, none of Barker's testimony at the change of plea hearing or at sentencing in *Barker I* was used against him in *Barker II*, *see infra* at Part III.C.

Because there was no due process violation, there was no duty to disclose. This claim is denied.

**B. Conspiracy vs. Substantive Offenses**

Barker asserts that Counts 2 and 3 were conspiracy counts and were duplicative of and/or multiplicitous with Count 1. Mot. § 2255 at 6-7 ¶¶ 3-4, 9 ¶ 7[1], 9-10 ¶ 8, 13 ¶¶ 1[1]-2[1]. This allegation arises from the fact that Counts 2 and 3 of the superseding indictment alleged that the offenses occurred "in violation of 21 U.S.C. §§ 846 and 841(a)(1)." Superseding Indictment (doc. 114) at 2. But the allegations of those two counts plainly set forth substantive offenses of distribution and possession with intent to distribute, not conspiracy. No one was fooled. Fed. R. Crim. P. 7(c)(2); *Russell v. United States*, 369 U.S. 749, 760-63 (1962). This claim

is denied.

### C. Use of Barker's Testimony

Barker claims he was unfairly induced and unwisely counseled to give self-incriminating testimony at his sentencing in *Barker I* and in the bench trial in *Barker II*, effectively lessening the prosecution's burden of proof in *Barker II*. Mot. § 2255 at 7-8 ¶ 5, 10 ¶ 9, 12 ¶ 2(b). Barker testified at sentencing in *Barker I* that Brothers and Tetzlaff were not connected and that all the drugs he had on his person, in his vehicle, or in the motel room in Billings were part of "the same activity that arises out of the indictment in this case." *Barker I* Sentencing Tr. at 29:6-32:7.

At Barker's bench trial in *Barker II* on March 21, 2006, Pich testified that she began cooperating with law enforcement in June 2003: "Well, I knew they knew what I was doing so I just cooperated and told them." Bench Trial Tr. at 71:21-73:11. Agent Magnuson testified that he knew Barker was mailing a package to Pich because Tasha Carter told him so. *Id.* at 97:7-98:20. He contacted Agent Morse in the Postal Inspector's office, the package was intercepted, and the rest is history. *Id.* at 91:3-93:19. Barker was found guilty in *Barker II* of distributing meth and possessing it with intent to distribute via Sheila Pich. I listened to everything Barker said at bench trial in *Barker II*. I did not hear anything about the evidence that I did not already know from the previous witnesses' testimony, and none of their testimony depended

14

on what Barker said at sentencing in *Barker I*. Had Barker declined to testify in both cases, nothing would have been different at trial.

As for sentencing, the methamphetamine specifically quantified in *Barker I* totaled a little over 503.6 grams, though 503.6 grams was the total used. *Barker I* Presentence Report ¶¶ 12, 19, 22, 24, 31; *see also id.* ¶ 23 (Cleland estimated Tetzlaff bought 8-9 ounces per week from Barker). The probation officer obviously took into account the quantities of meth found on Barker and in his vehicle and wrote his report before Barker testified that those quantities were his. More importantly, not a single gram of that methamphetamine was used against him in *Barker II*. The *Barker II* quantity was based solely on transactions between Barker and Pich. *Barker II* Bench Trial Tr. at 212:20-213:11; *Barker II* Presentence Report ¶¶ 27, 32.

This claim is denied.

### D. "Sandbagging"

Barker avers that the "Bakersfield pound" – that is, the pound mailed to Sheila Pich – was "sandbagg[ed]" or "withheld" to enhance his Billings sentence to life in prison. Mot. § 2255 at 13-14 ¶¶ 3-4. It was not charged or used at sentencing in *Barker I*, and it had nothing to do with "enhancing" his sentence in *Barker II*. This claim is denied.

### E. "One Big Conspiracy"

Barker claims that "both the Missoula and Billings indictments constituted a single ongoing conspiracy to possess with intent to distribute methamphetamine in the District of Montana." Mot. § 2255 at 8-9 ¶ 6.

They didn't. Of course Barker and all his distributors intended to sell drugs. They shared that goal with every drug dealer in the world, but not all drug sales are one enormous conspiracy. Even multiple drug sales between the same persons do not necessarily constitute a conspiracy. "[C]onspiracy requires proof of an agreement to commit a crime other than the crime that consists of the sale itself." *United States v. Lennick*, 18 F.3d 814, 819 (9th Cir. 1994) (internal quotation marks and citation omitted). A conspiracy exists only if there is a recognizably "generalized, coherent and consistent scheme for the reception and distribution of [drugs] and division of profits [or other benefits] from sale," *United States v. Fernandez*, 388 F.3d 1199, 1227 (9th Cir. 2004), among the members of the conspiracy.

Stephens tried to show that the same offenses alleged in *Barker I* were alleged again in *Barker II*. *See, e.g.*, Bench Trial Tr. at 23:2-29:11, 136:6-141:19. He failed because they were not. "[A]n overlap," *id.* at 137:24, in investigating agents' activities and communications with each other, *id.* at 111:8-136:5, does not mean the object of the investigation is one big conspiracy. The Court of Appeals affirmed my finding at bench trial that Barker's transactions with Pich were not performed in

16

furtherance of one overarching conspiracy. There was no evidence presented in either case to show that Pich cooperated with persons other than Barker or understood that multiple people needed to participate and cooperate to sustain Barker's ability to deliver methamphetamine to her. Bench Trial Tr. at 212:10-14; Mem. at 3, *Barker*, No. 09-30339. Barker neither alleges nor alludes to anything outside the record that would tend to show otherwise. In addition, although his testimony came as no surprise, *see supra* Part III.C, Barker testified that Tetzlaff and Pich were not connected. *Barker I* Sentencing Tr. at 37:6-41:8; *Barker II* Bench Trial at 210:4-7. Tetzlaff said so too, Bench Trial Tr. at 181:12-20, 182:10-14, 187:5-191:8 (showing that Barker dealt with Pich and Tetzlaff separately), and Pich did not even know who Tetzlaff was, *id.* at 68:10-69:2. Barker cannot remake the facts. This claim is denied.

### F. Subject-Matter Jurisdiction

Barker says the Court lacked subject-matter jurisdiction to sentence him for an offense not charged in the indictment. Mot. § 2255 at 9 ¶ 7[2], 13 ¶ 3[1]. This claim depends on Barker's claim that Counts 2 and 3 of the *Barker II* Superseding Indictment charged him with conspiracy, *supra* Part III.B. It is denied.

### G. Collusion

Barker alleges that his "attorney colluded with the AUSA to secure his life sentence. And Barker adopts the files and records and transcripts in both . . . cases

17

to support this ground." Mot. § 2255 at 10 ¶¶ 9-10. Barker also alleges that the United States "creat[ed] a take it or leave it plea agreement" that "indicated it encompassed all criminal conduct on the part of Barker." *Id.* at 12 ¶ 2(b); *see also id.* at 13 ¶ 2[2]. He claims that counsel and the AUSA "lured" Barker into testifying at sentencing in *Barker I* and then used that testimony against him in *Barker II*. *Id.* at 7-8 ¶ 5, 10 ¶ 9. Because nothing Barker said in either *Barker I* or *Barker II* broke new ground or was especially incriminating, I do not understand what he is talking about. The United States can offer whatever plea agreements it wants, "take it or leave it" or otherwise. The plea agreement Barker accepted in *Barker I* plainly did not "encompass[] all criminal conduct on the part of Barker." Any such "understanding" was unreasonable. Order (doc. 248) at 16. That finding was affirmed on appeal. Mem. at 3, 4, *Barker*, No. 09-30339. *Barker I* had no impact on *Barker II*. This claim is denied.

### H. § 851 Information

With respect to the § 851 Information, Barker contends that the prosecution's decision to file the § 851 Information in both cases "attests to the vindictive nature of the Billings indictment." Mot. § 2255 at 12 ¶ 1; *see also id.* at 14 ¶ 3. Neither 21 U.S.C. § 841 nor § 851 limit the number of times a prosecutor may use a defendant's prior convictions. There was no vindictiveness.

Barker claims that the prosecution, Mot. § 2255 at 12-13 ¶ 2(c), and appellate counsel, *id.* at 14 ¶ 1, should have known one of his convictions had been set aside. But how? Stephens did not file the stipulated dismissal until September 2011 and the court did not dismiss the conviction until November 2011. This claim is denied.

Barker's claim that Stephens was ineffective for "failing to follow up" on the dismissal of one of his prior convictions, Mot. § 2255 at 11 ¶ 11, is addressed separately.

### I. Cumulative Error

Barker asserts cumulative error. Mot. § 2255 at 14. Only one appears to have occurred – a big one, but still only one – so there could be no cumulative error. This claim should be denied.

### J. Resolution

In his Memorandum, filed June 29, 2012, Barker asserts that Assistant Federal Defender Merchant was ineffective because he failed to follow up on a resolution proposed by AUSA Van de Wetering on December 11, 2007, to moot the appeal in *Barker II*. *See* Mem. (doc. 267) at 20-21 ¶ 2[2]; Letter (doc. 267-1 at 19). But Barker's case was before this Court at that time on a limited remand from the Court of Appeals. There was no jurisdiction to amend the judgment. Barker could have dismissed his appeal and the parties could have agreed to proceed under 28 U.S.C.

§ 2255, but someone has to show a violation of the law to get relief under § 2255; it is not a means for parties to bargain after judgment is entered. This claim is denied.

**K. Motion to Amend**

While the motion to amend will be granted, it adds only one new claim. Barker asserts that distribution of methamphetamine is a lesser included offense of possession with intent to distribute. Mot. to Amend (doc. 271) at 7-8 ("Claim N"). While this claim may have merit, it is likely best addressed after resolution of the § 851 issue. All other claims in the motion to amend have already been addressed.

Accordingly, IT IS HEREBY ORDERED:

1. Barker's motion to amend (doc. 271) is GRANTED and the claims set forth there are deemed part of the § 2255 motion.

2. Except the claims at page 11 ¶ 11 of the § 2255 motion and "Claim N" in the motion to amend, all of Barker's claims are DENIED. They will not be further addressed in these proceedings.

DATED this 12th day of February, 2013.

Richard F. Cebull, Chief Judge
United States District Court

20